IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LEVI LLOYD HARVEY,

                    Plaintiff,

          v.                         CASE NO.  11-3137-SAC

Karen Rohling, Warden,
et al.,

                    Defendants.

MEMORANDUM AND ORDER

        This civil rights complaint, 42 U.S.C. § 1983, was filed

pro se by an inmate of the Hutchinson Correctional Facility,

Hutchinson, Kansas.


FILING FEE

        The fee for filing this civil action is $350.00.  Plaintiff

has not paid the fee.  Nor has he filed a complete Application to

Proceed Without Prepayment of Fees, that includes his affidavit, on

court-approved forms.[1]  Mr. Harvey has previously been forewarned

that under 28 U.S.C. § 1915(b)(1), being granted leave to proceed

without prepayment of fees does not relieve him of the obligation

to pay the full amount of the filing fee.  Instead, it entitles him

to pay the fee over time through payments automatically deducted

---

[1]        Plaintiff will be required to submit a complete Application to
Proceed Without Prepayment of Fees with affidavit in this case, and forms will
be provided.  He must write the case number of this case on the first page of all
pleadings or motions he submits for filing in this case.  He may not write more
than one case number on any pleading submitted by him or submit a single pleading
for filing in more than one case.

from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2).[2] He is obligated to pay the $350.00 fee for each civil case that he files in this court.

Plaintiff has submitted an Inmate Account Statement as statutorily mandated (Doc. 2). Pursuant to 28 U.S.C. § 1915(b)(1), the court is required to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action. Having examined the records of plaintiff's account, the court finds the average monthly deposit to plaintiff's account over that period was $44.57, and the average monthly balance was $14.43. The court therefore assesses an initial partial filing fee in this case of $8.50, twenty percent of the average monthly deposit, rounded to the lower half dollar. Plaintiff must pay this initial partial filing fee before this action may proceed further, and will be given time to submit the fee to the court. His failure to submit a complete motion and the initial fee in the time allotted may result in dismissal of this action without further notice.

## SCREENING

Because Mr. Harvey is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any

---

[2]     Pursuant to §1915(b)(2), the Finance Office of the facility where plaintiff is currently confined will be authorized to collect, in connection with each action he files, twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full.

portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b).  Having screened all materials filed, the court finds the complaint is subject to being dismissed for the following reasons.

**FAILURE TO ADEQUATELY STATE CLAIMS AND SUPPORTING FACTS**

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937 (2009), the United States Supreme Court held that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949 (quoting Bell, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Nevertheless, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).  The court accepts all well-pleaded allegations in the complaint as true.  See

Anderson v. Blake, 469 F.3d 910, 913 (10th Cir. 2006).  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  Twombly, 550 U.S. at 558.  The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated."  Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center, 492 F.3d 1158, 1163 (10th Cir. 2007).

        Plaintiff has not properly utilized the court-provided complaint forms to set forth his claims.  Instead, he inserts many papers inside his complaint including a "narrative" and numerous "Requests to Staff Members," which are first-level prison administrative grievances.  He makes very general references to his narrative and all "attached documents and more" in the spaces for factual background and supporting facts, but does not discuss each attachment and how it relates to his claims.

        Three counts are specified in the complaint.  Plaintiff does not indicate which factual allegations of the many in his attachments are offered to support each count.  His attachments contain many allegations that do not appear relevant to any of his three counts.[3]  Thus, it is very difficult to discern what

---

[3]        For example, plaintiff's narrative contains many statements of general irritations such as verbal threats, warnings, and orders by correctional officers, which clearly do not rise to the level of federal constitutional violations.  He also attaches a letter in which he urges an agency to conduct an inspection with regard to skin infections.

constitutional claims Mr. Harvey asserts and what facts he believes support each of those claims.

The court has considered the complaint, plaintiff's long chronological "narrative" of events and incidents, and his other attachments. Plaintiff's allegations, counts and claims for relief can be generally grouped into three categories. The court very liberally construes his complaint to assert claims based upon these three categories.

### *Exposure to Asbestos*

In March 2010, plaintiff alleges that he was assigned to the department that was installing air conditioning equipment during renovations at the LCMHF when he and other inmates were exposed to asbestos insulation. On June 15, 2010, plaintiff wrote OSHA due to his concerns about the asbestos. On June 29, 2010, areas that still contained asbestos were closed off, asbestos contamination signs were posted, and renovation efforts ceased. On August 2, 2010, a company from Wichita arrived and began removing asbestos insulation.

Plaintiff alleges no facts regarding his personal exposure to asbestos. Nor does he seek any form of relief as a result of the allegations in his narrative concerning asbestos. As far as the court can tell, plaintiff includes these allegations as background for his claims of mail mishandling and reprisals. He claims cruel and unusual punishment in one count and in his request for relief, but only for time spent in segregation. Accordingly, the court finds that these facts in his narrative state no claim

for relief.

### *Mail Mishandling*

On June 18, 2010, Paul Runnell CCII handed plaintiff an envelope with "a torn tamper proff (sic) adhesive flap" that was from OSHA and clearly marked Official Mail and Confidential.  On June 22, 2010, plaintiff asked Runnells about the letter, and Runnells responded that it had come that way and that he would have to talk to the "mail lady."  Runnells has not allowed plaintiff to be present during the copying of his legal and official mail prior to sending, which plaintiff claims is a violation of policy and his "confidentiality rights."

On June 23, 2010, plaintiff spoke with Ms. Vonfeldt, the mail lady, about the OSHA letter.  She stated that the log did not show that the letter had been opened, that she would not open a letter marked official and confidential, and that she always uses a letter opener.  Plaintiff showed her the envelope, and she stated that it was not opened that way in the mailroom.  Runnells later stated to plaintiff that mail often gets damaged during mailing. Ms. Vonfeldt was a temporary employee and has resigned.

Plaintiff's exhibits also indicate that he complained because responses to his grievance appeals from the Secretary of Corrections office were not in a sealed envelope when he received them.  He was informed in response to his grievances that they were not sent to the prison in a sealed envelope, and that all mail from that office came in one envelope and was distributed to the inmates.

### Disciplinary Actions and "Reprisals"

Plaintiff complains of disciplinary actions taken against him based on the following allegations. On May 7, 2010, he was served a disciplinary report (DR) for keeping "the tops of bubble packs" which he kept for use in maintaining a medical record. He alleges that defendants' motivation was to show that "they" did not like his keeping such records. On May 17, 2010, plaintiff submitted a grievance with regard to his medical restrictions being ignored, and was "made subject to reprisal" to discourage him from filing grievances. On May 28, 2010, plaintiff was sitting in an area near the dayroom when defendant Caro aggressively stated that the dayroom was not open yet. Caro then "loudly insinuated" to other inmates in the area that Harvey had pointed out their presence, making them upset at plaintiff, and announced to all that the dayroom was not open. On June 30, 2010, plaintiff was called to Mr. Runnell's office and threatened with disciplinary actions for "helping" a disabled inmate. On July 29, 2010, Mr. Bolling overheard plaintiff speaking about KDOC employees and nepotism, and "insinuated that he would be subject to "reprisal/adverse actions" if he pursued this issue. Plaintiff reported this threat to CCI Rick Perez, who went to speak with Bolling and mentioned nothing further to plaintiff. On September 1, 2010, UTM Randy Green overheard plaintiff telling another inmate what he needed to do with respect to his hernia injury. Mr. Green accused plaintiff of "inciting a riot." On September 2, 2010, plaintiff appeared for two disciplinary hearings. The disciplinary administrator, Paht

Willesdan, only allowed the testimony of the correctional officers that had written the DRs and denied plaintiff's requests for witnesses.  During the first hearing, Willesdan threatened to call a condition 30 (an out of control situation) to coerce plaintiff not to defend himself.  During another hearing, Mr. Willesdan called a condition 30 when there was no need.  Mr. Willesdan had plaintiff placed in disciplinary segregation and wrote a DR against him.  A hearing was held on this DR on September 16, 2010, and CSII Easley was the hearing officer.   Mr. Willesdan had an unprofessional demeanor at the hearing.  Plaintiff was not sent to disciplinary segregation, and there was no written disposition.  On September 28, 2010, UTM Randy Green ordered plaintiff to quit "helping" another inmate.  On October 22, 2010, plaintiff was informed that since he had just gotten a DR for insubordination/disrespect, if he were to get another he would be transferred.  On November 18, 2010, he was transferred to HCF. Plaintiff claims that every disciplinary hearing he had violated due process in that he was not informed of his right to representation and his requests for witnesses and for cross-examination were denied.  However, his good time has been forfeited only once.  Plaintiff claims that withholding an inmate's "good time awards" is a double jeopardy violation, and that they may only be withheld by the disciplinary administrator or hearing officer after a hearing, not by other correctional counselors.  He also complains that the formula for allocating good time awards varies among inmates.

**CLAIMS AND REQUESTED RELIEF**

As count I for this complaint, Mr. Harvey claims denial of due process and confidentiality rights.  As supporting facts, he refers to "attached documents," and states that they include records of each DR hearing, and all confidential envelopes that were opened.[4]  As count II, plaintiff claims wrongful imprisonment and cruel and unusual punishment based upon his placement in disciplinary segregation.  As count III, plaintiff claims "hendering (sic) the complaint process, obstructing justice."

In plaintiff's Request for Relief, he seeks "compensation for time wrongfully held in Disciplinary Segregation and out of (his) custody classification," and for cruel and unusual punishment and violation of his confidentiality.

**PERSONAL PARTICIPATION OF NAMED DEFENDANTS**

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based.  Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993)(affirming district court's dismissal where "plaintiff failed to allege personal participation of the

_____

[4]    Contrary to plaintiff's statements no records of disciplinary proceedings and no envelopes are attached to his complaint.

9

defendants"). As the U.S. Supreme Court recently reiterated in Iqbal, 129 S.Ct. at 1948:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. (citations omitted). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Id.

In the caption of his complaint, plaintiff names three defendants: Karen Rohling, Warden, Larned Correctional Mental Health Facility, Larned, Kansas (LCMHF); Ray Reno, Deputy Warden, LCMHF; and Vincent Caro, "CSI". He lists 13 additional defendants including several other employees at the LCMHF and three officials of the Secretary of Corrections' office. Even liberally construed, Mr. Harvey's allegations fail to meet the standards for bringing a civil rights complaint in federal court. First, Mr. Harvey fails to adequately "plead that each Government-official defendant, through [his or her] own individual actions, has violated the Constitution," which is a requirement under Iqbal. Williams v. Sirmon, 350 Fed.Appx. 294, 299 (10th Cir. 2009)(unpublished)(citing see id. at 1948). Facts showing the personal participation of each defendant in the alleged constitutional deprivation(s) is a necessary element of a civil rights claim under 42 U.S.C. § 1983. Plaintiff describes no acts whatsoever by defendants Rohling, Reno, Meadows, Brown, Shaver, Bolling, Werholtz, Haden, Simmons, or Bueschman. Nor does he describe acts by defendants Willesdan,

Green, Vonfeldt or Johnson that were unconstitutional.  Plaintiff's claims against all defendants are thus subject to dismissal for failure to allege facts showing personal participation in unconstitutional acts.


## EXHAUSTION OF ADMINISTRATIVE REMEDIES

42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or
> any other Federal law, by a prisoner confined in
> any jail, prison, or other correctional facility
> until such administrative remedies as are
> available are exhausted.

The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege denial of medical treatment or some other wrong.  Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion in cases covered by § 1997e(a) is not within the court's discretion, but is mandatory.  "[E]xhaustion requirements are designed to . . . give the agency a fair and full opportunity to adjudicate their claims." Woodford v. Ngo, 548 U.S. 81, 90 (2006). Full and proper exhaustion of administrative remedies is required, and entails utilizing "all steps that the agency makes available, and doing so *properly* (so that the agency addresses the issues on the merits)." Id. at 90.

The grievance procedure for Kansas state prisoners is established in administrative regulations.  See KS ADC §§ 44-15-101 et seq.  Section 44-15-101(b) provides that before utilizing the

grievance procedure, the inmate must attempt "to reach an informal resolution of the matter with the personnel who work with the inmate on a direct or daily basis" by contacting unit team members. Section 44-15-101(d) sets forth a three-level process which requires a prisoner to "first submit the grievance report form to an appropriate unit team member." KS ADC 44-15-101(d)(1). If the prisoner is not satisfied after step one, he "shall then submit the grievance report form to the warden of the facility." KS ADC 44-15-101(d)(2). Finally, if "not resolved, the grievance may be next submitted to the office of the secretary of corrections. KS ADC 44-15-101(d)(3). The procedure to follow at each step is fully set out in KS ADC 44-15-102. "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." Fields v. Oklahoma State Penitentiary, 511 F.3d 1109, 1112 (10th Cir. 2007). Unexhausted claims must be dismissed. Jones v. Bock, 549 U.S. 199, 223-24 (2007).

The failure to exhaust administrative remedies is an affirmative defense. Jones, 549 U.S. at 203. This means that a prison inmate is not required "to allege and demonstrate exhaustion in his complaint." Id. Consequently, the question of exhaustion generally does not arise until it is raised by a defendant. However, the Tenth Circuit has held that

> if a complaint makes it clear through the prisoner's affirmative statements he has not exhausted his administrative remedies, the district court may raise the exhaustion question sua sponte provided it seeks additional information from the prisoner.

<u>Escobar v. Reid</u>, 240 Fed.Appx. 782, 784 (10th Cir. 2007)(unpublished)(citing <u>see</u> <u>Aquilar-Avellaveda v. Terrell</u>, 478 F.3d 1223, 1225 (10th Cir. 2007); <u>see also</u> <u>Fogle v. Pierson</u>, 435 F.3d 1252, 1258 (10th Cir. 2006).

In response to the question on his form complaint as to how he sought administrative relief, Mr. Harvey writes "Grievance - Grievance Appeal to Central Office - complaint letters to State/Federal agencies" including Department of Justice and FBI. Writing letters to federal agencies or officials and even to "Central Office", without following the steps in the prison administrative grievance process, does not amount to proper exhaustion.  The court finds that it is appears from allegations in the complaint that Mr. Harvey did not fully and properly exhaust the available prison administrative remedies on each of his claims before filing this lawsuit.

Plaintiff shall be given time to allege facts or provide exhibits showing that he followed each of the steps set forth in the Kansas regulations in a timely and proper manner.  He must show that he properly followed the three-step exhaustion process on each of his claims including that he was exposed to asbestos, that his mail was mishandled, that disciplinary proceedings against him violated due process, and that his placement in disciplinary segregation was cruel and unusual, as well as any other constitutional issues he intends to pursue in this complaint. Plaintiff's § 1983 complaint is subject to being dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A, 1915(e)(2)(B)(ii), and 42

U.S.C. § 1997e(c)(1) for failure to exhaust available administrative remedies prior to filing this action. Accordingly, if plaintiff fails to demonstrate full and proper exhaustion within the time allotted, this action may be dismissed without further notice.

**FAILURE TO STATE A CLAIM**

Mr. Harvey's complaint is also subject to being dismissed for failure to state a federal constitutional claim. "To state a claim under (42 U.S.C. §) 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . . committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48-49 (1988)(citations omitted); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978)); Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992).

Claims of improper opening of legal and official mail might be asserted as constitutional claims under the First Amendment. The only actual opening of official or legal mail for which plaintiff provides sufficient crucial facts, such as the date and content of the mail, is that of his letter from OSHA. This single incident of a torn or even an opened envelope does not, without more, state a federal constitutional violation.

With respect to his other allegations in his first count, plaintiff provides no authority for his assertion that he has a confidentiality or other First Amendment right to have grievance appeal responses returned in a sealed envelope rather than by the

14

established procedure of the Office of the Secretary of Corrections.  Nor does he allege what injury has resulted.

Plaintiff's allegations regarding all the disciplinary proceedings against him in which forfeiture of good time was not a sanction, which as noted is all but one, do not evince a denial of due process.  This is because there is no federal constitutional right to due process in disciplinary proceedings where segregation and/or restrictions were the only sanctions.  With regard to the one proceeding in which he was sanctioned with loss of good time, plaintiff does not allege sufficient facts to show a federal due process violation.  He does not allege the date or nature of the charged offense, the date of the hearing, or what happened during these particular proceedings that violated due process.  Nor does he name which defendant was involved and describe his or her unconstitutional acts.

Plaintiff states no valid factual or legal basis for his general challenge to the withholding of good time awards at the end of a 120-day review period by correctional counselors.  See Davis v. McKune, 30 Kan.App.2d 822, 824-25, 48 P.3d 1287 (Kan.App. 2002)(Withholding of good time credits by unit team manager rather than by disciplinary board and hearing officer not violation of due process; and the distribution of inmate's good time credits was pursuant to regulation which provided that the award of good time credits was the act of the unit team.)(citing KS ADC 44-6-101(d), 44-13-406.).  He does not even allege facts showing that he has had good time awards withheld in this manner.  Nor does he allege which

15

defendant acted to withhold his good time awards or provide the date or reasons given.  His argument that it is a violation of double jeopardy fails for several reasons.  It is well-established that the Double Jeopardy clause only applies to proceedings that are "essentially criminal" in nature.  See Breed v. Jones, 421 U.S. 519, 528 (1975).  It is also "well established that prison disciplinary sanctions" -such as administrative segregation- "do not implicate" double jeopardy protections.  Fogle v. Pierson, 435 F.3d 1252, 1262 (10th Cir. 2006)(citing Wirsching v. Colorado, 360 F.3d 1191, 1205 (10th Cir.2004)).  Furthermore, Mr. Harvey has no constitutionally-protected liberty interest in earning good time credits because the awards are discretionary under Kansas law.  See Templeman v. Gunter, 16 F.3d 367, 371 (10th Cir. 1994); see Davis, 30 Kan.App.2d at 823 ("Because good time credits can be withheld when the inmate has not yet earned the credits by being violation free for the review period, the inmate has no protected liberty interest in those unearned credits.").  Finally, even if plaintiff had credit withheld, he alleges no facts showing that as a result he will be confined beyond his original sentence.  See Carroll v. Simmons, 89 Fed.Appx. 658, 663 (10th Cir. 2004)(citations omitted).  In short, plaintiff has not been punished a second time and withholding good time credits does not constitute an additional punishment for the same offense.  Id.  In any event, any claim that Mr. Harvey is entitled to additional credit against his sentence is not properly raised in this civil rights complaint.  Such a claim is, in essence, a request for speedier release, which may only be

raised in a petition for writ of habeas corpus. <u>Wolff v.</u> <u>McDonnell</u>, 418 U.S. 539, 554-55 (1974)(citing <u>Preiser v. Rodriquez</u>, 411 U.S. 475, 499, n.14, 500 (1973)). This action will not be construed as a habeas petition because it contains non-habeas claims, and there is no indication that Mr. Harvey has exhausted all administrative and state court remedies, which is a prerequisite to seeking habeas review in federal court.

Furthermore, plaintiff may not combine claims in a single complaint that are based upon different actions taken at different times by different individuals.[5] He does not allege any substantial connection between disciplinary actions taken against him and his allegations regarding asbestos and mail mishandling.

---

[5]     FRCP Rule 20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants.   Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

<u>Id</u>. FRCP Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."  While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." <u>Zhu v. Countrywide Realty Co., Inc.</u>, 160 F.Supp.2d 1210, 1225 (D.Kan. 2001)(citation omitted).

The Court of Appeals for the Seventh Circuit has explained that under "the controlling principle" in FRCP Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007). Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." <u>Id</u>.  It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act.  <u>Id</u>. (FRCP Rule 18(a) ensures "that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").  Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." <u>Id</u>.

Accordingly, the court finds that these claims are improperly joined in this action.

Plaintiff's allegations regarding his security classification and segregated confinement fail to state a claim because they are conclusory and for the reason that he has no constitutional right to a particular security classification or to remain in the general population. Plaintiff's other claims, if any, are likewise either not supported by sufficient factual allegations and are thus conclusory, or they simply fail to state a federal constitutional claim.

The court concludes for the foregoing reasons that plaintiff has failed to allege sufficient facts to support a federal constitutional claim. Plaintiff will be given time to show cause why this action should not be dismissed for the reasons stated in this Memorandum and Order.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is granted thirty (30) days in which to submit a properly completed Application to Proceed Without Prepayment of Fees upon court-provided forms.

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff must submit to the court an initial partial filing fee of $ 8.50. Any objection to this order must be filed on or before the date payment is due. The failure to pay the fees as required herein may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff is required to file a Response to this Memorandum and Order in which he shows (1) that he has properly exhausted all available prison administrative remedies on each of his claims, and (2) cause as to why this action should not be dismissed for the reasons stated in this Memorandum and Order.

The clerk is directed to send plaintiff IFP forms.

**IT IS SO ORDERED.**

Dated this 12th day of September, 2011, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge